UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| GENE LOVE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:17-cv-00008 |
| v. | § § | JURY TRIAL DEMAND |
| PAUL L. FOSTER, SIGMUND L. CORNELIUS, L. FREDERICK FRANCIS, ROBERT J. HASSLER, BRIAN J. HOGAN, JEFF A. STEVENS, SCOTT D. WEAVER, WESTERN REFINING, INC., TESORO CORPORATION, TAHOE MERGER SUB 1, INC., and TAHOE MERGER SUB 2, LLC, | § § § § § § § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff Gene Love ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Western Refining, Inc. ("Western" or the "Company") against Western's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Tesoro

Corporation ("Tesoro"), through its subsidiaries Tahoe Merge Sub 1, Inc. ("Merger Sub 1") and Tahoe Merger Sub 2, LLC ("Merger Sub II").

2.     On November 16, 2016, Western and Tesoro entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Tesoro will acquire all outstanding shares of Western common stock.  Western stockholders may elect to receive either $37.50 per share in cash or 0.4350 shares of Tesoro stock per Western stock (the "Merger Consideration"). Cash elections will be subject to proration if cash elections are made in respect of more than approximately 10.8 million Western Shares. Stock elections are not subject to proration.

3.     The Proposed Transaction is the result of a flawed, single-bidder process rife with conflicts of interest.  Not only will Western's officers and directors receive substantial payouts as a result of the Proposed Transaction, but certain members of the Board and management will continue employment with the combined company.  Western's Chief Executive Officer ("CEO") and Executive chairman will both became directors of Tesoro.  Moreover, the Company's financial advisor, Barclays Capital Inc. ("Barclays") is also conflicted.

4.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Form S-4 Registration Statement (the "Registration Statement") to be filed with the United States Securities and Exchange Commission ("SEC") on December 14, 2016.  The Registration Statement recommends that Western shareholders vote in favor of the proposed transaction (the "Proposed Transaction"). Specifically, the Registration Statement omits material information concerning: (i) the Board's determination that no other alternative transaction would be available; (ii) projections produced by Western management and used by Barclays in support of its analyses; and (iii) the financial analysis performed by Barclays.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Western's shareholders.  In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from Defendants' violations of the Exchange Act.

## PARTIES

6.      Plaintiff is, and has been at all relevant times, the owner of Western shares of common stock.

7.      Defendant Western is a Delaware corporation headquartered in El Paso, Texas. Western is an independent refining and marketing company.  The company trades on the New York Stock Exchange under the symbol "WNR."

8.      Defendant Paul L. Foster ("Foster") is and at all material times was the Chairman of the Company's Board.

9.      Defendant Sigmund L. Cornelius ("Cornelius") is a member of the Company's Board.

10.     Defendant L. Frederick Francis ("Francis") is a member of the Company's Board.

11.     Defendant Robert J. Hassler ("Hassler") is a member of the Company's Board.

12.     Defendant Brian J. Hogan ("Hogan") is a member of the Company's Board.

13.     Defendant Jeff A. Stevens ("Stevens") is the CEO of Western and a member of the Company's Board.

14.     Defendant Scott D. Weaver ("Weaver") is the Vice-President, Assistant Treasurer and Assistant Secretary of Western and a member of the Company's Board.

15.     Defendants Foster, Cornelius, Francis, Hassler, Hogan, Stevens, and Weaver are collectively referred to herein as the Individual Defendants and/or the Board.

16.     Non-Party Tesoro is a Delaware corporation that is headquartered in San Antonio, Texas.  Tesoro is an independent refiner and marketer of petroleum products.  Tesoro trades on the New York Stock Exchange under the symbol "TSO."

17.     Non-Party Merger Sub 1 is a Delaware corporation and a wholly owned subsidiary of Tesoro.  Merger Sub 1 was formed for the sole purpose of effecting the Proposed Transaction.

18.     Non-Party Merger Sub 2 is a Delaware limited liability company and wholly owned subsidiary of Tesoro.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20.     Personal jurisdiction exists over each Defendant either because Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendants by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Western maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants'

primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Western common stock and their successors in interest, except Defendants and their affiliates (the "Class").

23.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of November 14, 2016, Western has over 108 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(iii)     Whether Plaintiff and other members of the Class would suffer irreparable injury if compelled to vote in the Proposed Transaction based on a false and/or misleading Registration Statement.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

<b>FURTHER SUBSTANTIVE ALLEGATIONS</b>

**A.     Company Background**

24.     Western is an independent crude oil refiner and marketer of refined products incorporated in September 2005 under Delaware law with principal offices located in El Paso, Texas.  Western produces refined products at refineries in El Paso, Texas, near Gallup, New Mexico and in St. Paul Park, Minnesota.  The Company sells refined products primarily in Arizona, Colorado, Minnesota, New Mexico, Wisconsin, West Texas, the Mid-Atlantic region and Mexico through bulk distribution terminals and wholesale marketing networks.

25.     Western owns a significant limited partner interest in Western Refining Logistics, LP, ("MLP"). MLP, a publicly traded limited partnership, owns and operates logistics assets consisting of pipeline and gathering, terminalling, storage and transportation assets as well as a wholesale business that operates primarily in the Southwest. MLP operates its logistics assets.

26.     In June 2016, Western completed the acquisition of Northern Tier Energy LP in a deal valued at $1.4 billion.  Western touted its strategic move, announcing that the deal benefitted Western's shareholders by acquiring three of the most profitable refineries, simplifying its corporate structure, and providing access to more capital.

**B.     The Proposed Transaction Is the Result of a Flawed, Single Bidder Process**

27.     As described in the Registration Statement, the inadequate Merger Consideration is the result of a hastened, flawed sales process during which Western engaged solely with representatives of Tesoro and negotiations were spearheaded by conflicted members of the Board.

28.     Negotiations began in September of 2016 when Foster met with Tesoro's Chairman, President and CEO, Gregory J. Goff ("Goff").   On September 22, 2016, Foster informed the Board of Tesoro's interest at which point the Board authorized Foster, Stevens and Weaver to continue to engage in acquisition discussions.  The Board immediately consented to Tesoro's potential engagement of Goldman Sachs in connection with the deal and agreed to initiate discussions with Barclays to serve as Western's financial advisor.

29.     Although Barclays was not formally engaged until November 11, 2016, it began advising the Board on its strategic options immediately.

30.     On November 2, 2016, Tesoro proposed an approximately 25% premium to Western's share price, with a consideration mix of 90% Tesoro stock and 10% cash.  Tesoro also proposed that Western could appoint one person to the Tesoro board of directors and one director to TLLP, Tesoro's master limited partnership.

31.     On November 4, 2016, the Board held a telephonic meeting with Western's senior management, Barclays, and its legal advisor.  During this call, Barclays speculated that

a superior alternative transaction was likely.  Despite Barclays' opinion, the Board disregarded it and determined not to seek other potential purchasers or higher offers.  Rather, the Board was determined to pursue a transaction with Tesoro and Tesoro only.  At this point, the Board authorized Foster to make a counter proposal to Tesoro that included a 27.5% premium and that Western be permitted to appoint two directors to Tesoro's board.  The parties continued to engage in negotiations over the ensuing weeks.

32.    Meanwhile, on November 7, 2016, draft voting and support agreements were delivered to Foster, Stevens and Weaver, and to Franklin Mountain Investments LP, a controlled affiliate of Foster's.  Foster, Stevens and Weaver collectively own over 22.5% of Western's outstanding stock.  These agreements were ultimately executed

33.    The Board met on November 10, 2016, and discussed, among other things, formally retaining Barclays as its financial advisor despite certain conflicts.  Specifically, Barclays has a $293 million stake in Western and has earned significant fees as a financial advisor to the seller in Western's acquisition of Northern Tier Energy LLP.  Despite the conflicts, the Board formally engaged Barclays as its financial advisor.

34.    In addition to these conflicts, Foster and Stevens, who led the negotiations, will become directors of Tesoro upon the closing of the Proposed Transaction.  Despite these conflicts, and despite the fact it was a single-bidder process, Western failed to conduct a pre-signing market check and failed to obtain a post-signing go-shop period.

35.    On November 16, 2016, the Board unanimously approved the Proposed Transaction and executed the Merger Agreement.

**C.    The Proposed Transaction Is Announced for Inadequate Consideration**

36.    On November 17, 2016, Tesoro and Western issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

### TESORO TO ACQUIRE WESTERN REFINING IN $6.4 BILLION TRANSACTION

- Transaction creates a premier, highly integrated and geographically diversified refining, marketing and logistics company

- Stock transaction at exchange ratio of 0.4350, with option to elect cash in lieu of stock up to a cap of 10% of the equity consideration; values the transaction at $6.4 billion

- Commit to delivering $350 to $425 million in annual synergies; run rate to be achieved within the first two years

- Expects to achieve 10% to 13% EPS accretion in 2018, the first full year of combined operations

- Well positioned, highly reliable and advantaged refining system with over 1.1 million barrels per day of refining capacity with access to wide array of advantaged crude oil

- Creates leading multi-brand marketing and convenience store portfolio in growing geographies with over 3,000 combined branded retail stations

- Expands opportunities for logistics growth in crude oil production basins and product regions, particularly in the Permian basin

**SAN ANTONIO AND EL PASO, TEXAS – November 17, 2016** - Tesoro Corporation (NYSE: TSO) ("Tesoro") and Western Refining, Inc. (NYSE: WNR) ("Western") today jointly announced a definitive agreement under which Tesoro will acquire Western at an implied current price of $37.30 per Western share in a stock transaction, representing an equity value of $4.1 billion based on Tesoro's closing stock price of $85.74 on November 16, 2016. This represents an enterprise value of $6.4 billion, including the assumption of approximately $1.7 billion of Western's net debt and the $605 million market value of non-controlling interest in Western Refining Logistics, LP (NYSE: WNRL). This transaction

has been unanimously approved by the boards of directors of both companies, and is another transformative step forward for Tesoro and the Company's ongoing commitment to creating significant value for shareholders, employees, communities and other key partners. The acquisition creates a premier, highly integrated and geographically diversified refining, marketing and logistics company and provides a strong platform for earnings growth and cash flow generation.

Under the terms of the agreement, Western shareholders can elect to receive 0.4350 shares of Tesoro for each share of Western stock they own, or $37.30 in cash per share of Western stock. Elections to receive cash will be subject to proration to the extent they exceed approximately 10.8 million shares (or approximately $404 million in the aggregate). Stock elections will not be subject to proration. The purchase price represents a premium of 22.3% to the closing price of Western's stock on the day prior to announcement, and a 31.6% premium to the volume weighted average price over the last 30 trading days. The transaction is expected to be tax-free to Western's shareholders who elect stock.

"The acquisition of Western further strengthens our integrated business model and extends our portfolio into attractive and growing markets," said Greg Goff, Chairman and CEO of Tesoro. "As a leading integrated refining, marketing and logistics company, this transformative acquisition drives value through a combination of access to advantaged crude oil, a strong, multi-brand marketing and convenience store portfolio and a robust platform for logistics growth, all of which will allow us to continue to create shareholder value."

"Also, our increased scale and diversity will enable us to leverage and enhance in-house technical capabilities, which we expect will result in cost efficiencies, the ability to drive more growth and increased productivity," Goff continued.

"This strategic combination provides our shareholders with the opportunity to participate in the tremendous future growth prospects and synergies of the combined company," said Paul Foster, Executive Chairman of Western Refining. "Joining forces with Tesoro, a company that shares our integrated business model strategy, will enable us to further leverage our capabilities in refining, marketing and logistics operations and allow our talented team to work on a growing number of exciting opportunities. We have tremendous respect for the Tesoro team and are excited to be

a part of a larger and more diverse organization to support our continued growth."

**Strategic Rationale**

This transaction will enhance the integrated refining, marketing and logistics operations of both companies, creating a combined company that is well-positioned to drive significant growth across the value chain.

- **Top Tier Refining System:** Adds Western's refineries in Texas, New Mexico and Minnesota to Tesoro's existing refineries in California, Washington, Alaska, Utah and North Dakota, which will expand the combined company's operational capabilities and improve access to advantaged crude oil and extended product regions. Combined, the Company will have ten refineries, a refining capacity of over 1.1 million barrels per day and will benefit from Tesoro's and Western's proven track record of operational excellence.

- **Strong, Combined Multi-brand Marketing and Convenience Store Portfolio in Growing Geographies:** Brings together 12 premium and leading value retail and convenience store brands to better serve a broad customer base and regional preferences, and provides improved ratable supply from the entire refining system. The combined retail operations will comprise over 3,000 branded retail stations operating under a variety of brands including ARCO®, Shell®, Exxon®, Mobil®, SuperAmerica®, Giant and Tesoro®.

- **Expands Opportunities for Logistics Growth:** Leverages an extensive and complementary logistics network with access to advantaged crude oil basins. The logistics business will include ownership in two high-growth, independent Master Limited Partnerships – Tesoro Logistics LP and Western Refining Logistics, LP. Upon close of the transaction, Tesoro will own the general partner and be the largest unitholder in each MLP. Tesoro is committed to growing the value of the combined logistics portfolio and the current logistics growth strategy will be deployed across the expanded business. This strategy consists of: generating stable fee-based revenues; optimizing existing assets; pursuing high-return organic growth opportunities; growing through strategic

acquisitions; and growing through the combined drop down inventory available to the two MLPs. Additionally, Tesoro expects to use the parent company's strong operating and execution capability to enhance the portfolio of opportunities in the high-growth Permian and other attractive crude oil basins. This will include investments in crude oil gathering and storage, as well as natural gas gathering and processing.

- **Significant Shareholder Value Creation from Synergies:** Shareholders of both companies will benefit from $350 to $425 million in operational, commercial and corporate synergies.The Company expects to achieve the full run rate of these synergies within the first two years. The Company is confident in its ability to achieve these synergies given its solid track record of integrating operations and leveraging its integrated business model to deliver earnings growth through productivity, cost and system optimization benefits.

- **Strong Financial Position and Significant Cash Flow Enable Investments for Future Growth, Reducing Debt and Returning Cash to Shareholders:** The combined company is expected to deliver strong cash flows providing growth in shareholder value through investments in high-return capital projects, dividends and share repurchases. Upon closing, Tesoro will continue to have a strong balance sheet and credit metrics, and will remain on track for achieving an investment grade credit rating. The Company has increased its share repurchase authorization by $1.0 billion to over $2.0 billion in total. Tesoro expects to maintain its current quarterly dividend of $0.55 per share (or $2.20 per share annualized) after closing and is focused on growing dividends commensurate with the growth of the Company.

**Leadership**

Upon closing, Greg Goff will continue to serve as Chairman, President and Chief Executive Officer of the combined company. Steven Sterin will continue to serve as Executive Vice President and Chief Financial Officer. Tesoro's Board of Directors is also expected to expand the size of the Board and name Western's current Executive Chairman, Paul Foster, and Western's current Chief Executive Officer, Jeff Stevens, as directors after closing of

the transaction. The headquarters of Tesoro will remain in San Antonio, TX.

### Approvals and Timing

The transaction is expected to close in the first half of 2017 and is subject to customary closing conditions, including approval by the shareholders of both companies and the receipt of regulatory approval.

### Public Invitation to Conference Call and Webcast

Tesoro and Western will live broadcast a conference call at 7:30 a.m. CT (8:30 a.m. ET) today to discuss the transaction. Tesoro will also provide an update regarding its 2017 stand-alone outlook on the conference call. Interested parties may listen to the conference call and access accompanying presentation slides by logging on to http://www.tsocorp.com or http://www.wnr.com.

### Advisors

Goldman, Sachs & Co. is serving as exclusive financial advisor to Tesoro and certain of its affiliates are providing committed financing. Sullivan & Cromwell LLP is serving as Tesoro's legal advisor for the transaction. Barclays is serving as exclusive financial advisor to Western and Davis Polk & Wardwell LLP is serving as its legal advisor.

37.     The Merger Consideration is entirely inadequate and represents a 24.4% discount to Western's 52-week high trading price of $46.65 per share.   Moreover, the Merger Consideration is a mere 11% premium over analyst 12-month target price of $33.27.  In fact, one SeekingAlpha article reported that Western's stock was "extremely undervalued":

> For me, the shares of WNR present an attractive trading opportunity. I see easy upside to $30 in the near term, offering a 50% return from the current share price. The $30 near-term price target is slightly below the midpoint of my estimate of the acceptable trading range for this company which accounts for the negative sentiment the company is experiencing at the present time. Over a longer period, I would expect shares to drift higher towards $40 in line with a mid-cycle P/E valuation and beyond that potentially higher to the $50 range once they have become fully valued.

**D.    The Preclusive Deal Protection Devices**

38.    As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

39.    By way of example, the Merger Agreement contains a strict no-solicitation provision barring the Company from soliciting competing acquisition proposals or engaging in discussions or providing information in connection with an alternative acquisition proposal. Further, this provision fails to provide a "go-shop" period that would allow the Board to rightfully seek out a better offer for the Company.

40.    In addition, the Merger Agreement contains an information rights and matching rights provision that requires the Company to notify Tesoro of certain unsolicited competing offers, provide Tesoro with information regarding such offers, and negotiate in good faith with Tesoro regarding same.  The Merger Agreement grants Tesoro recurring and unlimited matching rights, including: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) four (4) business days to negotiate with Western to amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

41.    Moreover, as previously discussed, Foster, Stevens and Weaver, who collectively own over 22.5% of Western's outstanding stock, entered into voting and support agreements to vote in favor of the Proposed Transaction.

*42.*    Ultimately, these preclusive deal protection provisions and the Voting Agreements illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal

for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Tesoro's inadequate offer price.

**E.**     **The Materially Incomplete and Misleading Registration Statement**

43.     On December 14, 2016, Western and Tesoro filed the Registration Statement with the SEC.  The information contained in the Registration Statement has thus been disseminated to Western shareholders to solicit their vote in favor of the Proposed Transaction.  The Registration Statement omits certain material information concerning the fairness of the Proposed Transaction and Merger Consideration.  Without such information, Western shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

44.     First, with respect to the background of the transaction, the Registration Statement fails to disclose why, after Barclays concluded that a superior alternative transaction was likely, the Board disagreed and determined a superior alternative was not likely.  This is particularly relevant in light of the fact that the Board did not conduct a pre- or post-signing market check.  Without this information, the Registration Statement is rendered materially false or misleading because Western's shareholders are unable to determine whether the Board's opinion regarding potential alternative transactions was reasonable.

45.     Second, with respect to Barclay's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the specific non-cash items used to adjust the after-tax unlevered free cash flows ("Free Cash Flows").  Specifically, Barclays used Western's Free Cash Flows for years 2017 through 2021.  The Registration Statement defines Free Cash Flows "as consolidated net income plus depreciation and amortization and tax-adjusted interest expense, less capital

expenditures and adjusted for other non-cash items."  As such, Free Cash Flows is a non-GAAP financial measure and it is common for companies to treat non-cash items differently in calculating non-GAAP financial measures.  The specific non-cash items used to adjust the Free Cash Flows in Barclays' discounted cash flow analysis are particularly material to Western's stockholders because without it, stockholders are unable to determine how non-cash items, like stock based compensation for instance, were treated in calculating Western's Free Cash Flows. The materiality of the non-cash items is particularly important since Goldman Sachs conducted its analysis using unlevered free cash flows directly from Western's financial statements.  By specifically disclosing that Barclays' Free Cash Flows figures were adjusted for certain "non-cash items," the Registration Statement only partially discloses at least two definitions of cash flows used leaving Western shareholders unaware of the differences between the analyses conducted by Goldman Sachs and Barclays. Stockholders are entitled to know the specific "non-cash items" used to adjust the Free Cash Flows.

46.     Third, the Registration Statement fails to disclose the company specific EBITDA multiples used in its *Selected Comparable Company Analysis*, or the median or average EBITDA multiple of the selected companies.  Without this information, Western's stockholders are unable to determine how the multiples used in determining Western's value compare to the other transactions and therefore cannot ultimately use this information to determine the value of Western.

47.     Lastly, the Registration Statement fails to disclose certain material information regarding Barclays' *Selected Precedent Transactions Analysis*, including the failure to disclose a specific, a mean, or a median EBITDA multiple for the selected transactions.  Without this information, Western's stockholders are unable to determine how the multiples used in

determining Western's value compare to the other transactions and therefore cannot ultimately use this information to determine the value of Western.  This information is particularly material in light of the fact that six of the ten transactions considered are more than ten years old.  Without this information, the Registration Statement is misleading, and Western's stockholders are entitled to this information.

48.     Defendants have knowingly, recklessly, or negligently omitted the above-referenced material information from the Registration Statement, in violation of the Exchange Act.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Western shareholders will suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations
of Section 14(a) of the Exchange Act and Rule 14a-9**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Defendants have filed the Registration Statement with the SEC with the intention of soliciting Western shareholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide the material information referenced above.

51.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Western, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

53.     Specifically, and as detailed above, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning the value of Western shares and the financial analyses performed by Barclays in support of its fairness opinion.

54.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Registration Statement is materially misleading and omits material information that is necessary to render it not misleading.   The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.   The Individual Defendants knew or should have known that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

55.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

56.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of Western within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Western and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to the time the Registration Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to

approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

60.      In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

63.      Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants, jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

C.      Directing Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 11, 2017.

Respectfully submitted,

_/s/ Thomas E. Bilek_
Thomas E. Bilek
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720
tbilek@bileklaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Shane T. Rowley
**LEVI & KORSINSKY LLP**
733 Summer Street, Suite 304
Stamford, CT  06901
Tel: (212) 363-7500
Fax: (212) 363-7171